NIGHT BOX FILED AUG 18 2003
CLARENCE MADDOX
CLERK USDC / SDFL / MIA

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA ex. rel.
SAL A. BARBERA,
    Plaintiffs,
vs.

CASE NO. 97-6590-CIV-JORDAN
MAGISTRATE JUDGE BROWN

TENET HEALTHCARE CORPORATION,
f/k/a National Medical Enterprises, and
d/b/a American Medical Holdings, Inc.,
North Ridge Medical Center, Palms of
Pasadena Hospital, Town and Country
Hospital, Lauderdale Clinical Services,
The Pain Institute of Tampa, The Center
For Quality Care and the Town and
Country Women's Center; and AMISUB
(North Ridge Hospital), Inc. d/b/a North
Ridge Medical Center,
    Defendants.
_____/

## RELATOR SAL A. BARBERA'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL

Relator, Sal A. Barbera, hereby replies in support of his motion to compel.

### ARGUMENT

Tenet claims great difficulty understanding Relator's argument. However, a review of the opening provisions of the False Claims Act ("FCA") illustrates its simplicity.

### THE FCA ("Reverse False Claims")

Under § 3729(a)(1) and (2) of the FCA, a person is liable for affirmative false claims. Affirmative false claims are based on a submission of false records to obtain money from the United States government. However, using false records to hide an obligation to pay money to the government is also fraudulent. Thus, Congress included a provision in the FCA that makes a person liable for what are known as "reverse false claims".

1

The reverse false claims provision of the FCA states:

> Any person who – knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government is liable to the United States Government for a civil penalty of not less than $5,000.00 and not more than $10,000.00, plus 3 times the amount of damages which the Government sustains because of the act of the person ... .

See 31 U.S.C. § 3729(a)(7).

## TENET'S CORPORATE INTEGRITY AGREEMENT

From June 29, 1994 to June 29, 1999, Tenet's Corporate Integrity Agreement required it to report "any credible evidence of misconduct" that *may* constitute a violation of criminal law or that *may* constitute a material violation of civil law, rules and regulations governing federally funded health care programs.

As detailed in Relator's Motion to Compel, credible evidence of misconduct concerning physician employment contracts and practice acquisitions was reported to high level Tenet administrators. See the 6 exhibits attached to Relator's Motion to Compel. Significantly, however, credible evidence of misconduct was also reported to Tenet's in-house counsel and chief compliance officer, Christi Sulzbach. Unfortunately, Sulzbach reported none of that evidence on any of the Annual Compliance Reports required by Tenet's Corporate Integrity Agreement. Of course, if any Annual Compliance Report indicates otherwise, Tenet ought to produce it now to this court.

## APPLICATION OF THE CRIME-FRAUD EXCEPTION

Each breach of Tenet's reporting obligations under the Corporate Integrity Agreement not only constitutes a "reverse false claim," it requires this court to pierce the

attorney/client privilege based on the crime–fraud exception. This court needs to go no further than Defendants' own response to the Government's Motion to Compel to justify an in-camera inspection of Tenet's purportedly privileged documents. Defendants' response to the Government's Motion to Compel attached an excerpt of the deposition of Tony Bennett, the CFO of Tenet Physician Services ("TPS"), who summarized his concerns about the illegality of the Lauderdale Clinical Services ("LCS") physician contracts to his superior, Jeffrey Heineman. Bennett deposition at 266 - 267. See Bennett Memo attached as Exhibit 1 to Relator's Motion to Compel where Bennett stated as follows:

> In every case the physicians salary and benefits were increased above their current levels (in some cases by more than 50%). In every case the salary was raised to a level greater than MGMA mean compensation for Internal Medicine. In every case the proforma indicated a substantial loss on the clinic.... It would certainly be difficult to defend that if not for the referrals this arrangement would not be made.

Heineman confirmed that he forwarded Bennett's memo to the appropriate people. Bennett deposition at 268. The appropriate people included in-house counsel/compliance officer, Sulzbach who told Heineman *"we'll handle it from here"*. Heineman deposition at 154 – 155.

Although Tenet never did respond in writing to Bennett's memorandum, Sulzbach went through the motions of an investigation when she called Bennett to meet and discuss his concerns. Bennett deposition at 268. The meeting lasted several hours and included Tom Holliday who represented Tenet during the Government's pre-intervention investigation and is now counsel of record overseeing the defense of Tenet in this case. Bennett deposition at 269. Together, Sulzbach and Holliday heard Bennett complain that LCS physician employment contracts appeared illegal. They knew Bennett's opinion that

3

the excessive compensation Tenet paid the doctors doomed LCS to suffer tremendous losses each year that could only be justified by the enormous revenues gained from their patient referrals to North Ridge Medical Center.

However, Sulzbach and Holliday apparently managed to mollify Bennett who said that he "felt comfortable that [his concerns] were being addressed [and that ] ... things were moving along". Bennett deposition at 269-270. Eventually, Bennett "voluntarily" left Tenet but was gratuitously awarded severance pay even though his contract did not entitle him to it. Bennett deposition at 23 – 24.

Yet, in a red herring attempt to persuade this court that Bennett's concerns were less than credible and, therefore not reportable, Defendants mischaracterize his testimony by claiming that Mr. Barbera concluded there was nothing illegal about the contracts. See Defendants' Response at 14. The actual testimony, however, was as follows:

> Q. Would you be more specific about who was saying what?
> A. Sal Barbera was saying to me in response to my asking the question whatever happened to the legal review of these documents [the LCS contracts]. His response to me is that ... he is saying ***everybody's been told*** that all of the contracts with the physicians have been reviewed by our legal people, and have found everything – there is nothing illegal about them and they are all fine.

See Bennett deposition at 262 (line 17) – 263 (line 2) (emphasis supplied). Incidentally, Bennett's February 24, 1997 memo was written at least 6 months after Mr. Barbera's employment with Tenet ended. No, Mr. Barbera was not a part of the Tenet team that hid the stench of those foul transactions as he was nothing more than an unwitting conduit, months before Bennett's meeting with Sulzbach and Holliday, of Tenet's now transparent coverup.

4

On the other hand, Sulzbach, as Tenet's in-house counsel and compliance officer, was personally involved, along with Holliday, in evaluating Bennett's concerns about the legality of the LCS physician contacts. Sulzbach chose not to discharge her duty to report those concerns to the government notwithstanding a Corporate Integrity Agreement mandating that Tenet reveal such information and, in fact, requiring Tenet to *"notify the DOJ and HHS of the outcome of [any] investigation"* about those concerns.

The concealment of such information fits squarely within the §3729(a)(7) "reverse false claims" provision of the FCA. Equally important, however, was Sulzbach's decision not to report that evidence and her subsequent failure to notify the DOJ and HHS of the outcome of her investigation. Those decisions enabled Tenet to violate the Corporate Integrity Agreement and facilitated the perpetuation of Tenet's fraud on the United States government. That conduct warrants application of the "crime-fraud" exception to Tenet's claims of privilege. Consequently, documents most likely to demonstrate Tenet's knowledge of misconduct concerning its physician employment contracts and practice acquisitions should no longer be hidden behind Tenet's self-serving cloak of secrecy.

## CONCLUSION

WHEREFORE, Relator respectfully request this court to grant his Motion to Compel and to require Tenet to produce all documents requested by the government and specifically the following documents cited at page 3 of Relator's Motion to compel: FLAPP # 523364-523812, FLAPP # 534807-534847, FLAPP # 534761-534799, FLAPP # 549516-549569 and FLAPP # 551850-552014.

Respectfully submitted,

GARY E. SHERMAN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished by U.S. Mail this 18th day of August, 2003 upon: Ana Martinez, Esq., Assistant United States Attorney, 99 N.E. 4th Street, Miami, Fl. 33132; David Wiseman, Esq., Department of Justice, Civil Division, Post Office Box 261, Ben Franklin Station, Washington, D.C. 20044; Allan J. Sullivan, attorneys for North Ridge Hospital and Tenet Healthcare Corporation, Miami Center, Suite 1450, 201 S. Biscayne Boulevard, Miami, Fl. 33131; Thomas Holliday, Esq., and Rodney Stone, Esq., Gibson, Dunn & Crutcher L.L.P. 333 South Grand Avenue, Suite 4600, Los Angeles, California 90071-3197; and Robert B. Krakow, Esq., Gibson Dunn & Crutcher LLP, 2100 McKinney Avenue, Ste. 1100, Dallas, TX 75201-6911.

LAW OFFICES OF GARY E. SHERMAN, P.A.
Attorney for Relator, Sal A. Barbera
440 South Andrews Avenue
Fort Lauderdale, FL 33301
Tel. 954/524-1100
Fax. 954/524-0008

GARY E. SHERMAN
Florida Bar No. 377295

A:\Reply in support of M-Compel.wpd
8/18/03 - 11:34 PM